The first case this morning is 14-5037, BASR Partnership v. United States. Mr. Weiner is going to do it. Good morning. I may have pleased the Court. Andy Weiner for the United States. The issue in this case is whether the exception to the statute of limitations, for making assessments under Section 6501C1 applies when the taxpayer's hired tax professional causes a taxpayer's return to be fraudulent and intends to evade the taxpayer's tax. Could I turn your attention first not to the statutory language that the Court of Federal Claims judge relied on, but more so to the 6229 issue that your friend raises and spends a great deal of time on? I know the government's response seems to be that there's some distinction between when you go, that this case is really about a taxpayer's return and not really about the partnership, but it's hard for me to see how you draw that distinction. I mean, this case started as issuing a final partnership adjustment, and BASR is in this case, and the partnership seems to be, the partnership return seems to be front row and center here. So is it your view that, no, there are two different types of cases, and this falls in the box where we're talking about taxpayer returns and not partnership returns? Correct. And just to back up, that is my contention. And just to back up as to clarify one, I think, important point, which is that there is no statute of limitations for filing an FPOT. So as you say, the way that these cases come about is that the government issues a final partnership administrative adjustment, and then at that point, the taxpayers can raise the individual defense that their statute of limitations, that they have no stake in the case and should not be considered parties bound by the judgment in a partnership proceeding because their individual limitations periods have expired. And so it's really the individual's limitations periods that are issued, even in a partnership proceeding. And so I understand why there's this awkward way in which we're discussing partners' limitations period in a partnership proceeding, but that's the statutory scheme that Congress has constructed, and that is why you've got one limitations period. That's, for instance, in AD Global. This Court said expressly that there is a single limitations period that applies to the assessment of tax. And what you have is you've got the minimum period that 6229 provides. Well, except, I mean, the difficulty there is, leaving aside the AD Global case, and what they said, and we're bound by that, obviously, but in subsection N where it says, too, for extension of period in the case of partnership items, see 6229, that's a pretty strong statutory language that this section doesn't apply. Go there. That's what's applicable. Right? I would respectfully disagree, Your Honor. I think that what the Court in, if you don't mind, we're going to bring up AD Global one more time to make this a small point, but AD Global says that 6501N2 is merely a cross-reference to an additional extension in the case of a partnership. But it doesn't, there is nothing in the language in N2, subsection N2, or in 6229, that turns off, effectively what taxpayers are arguing here is that it turns off the extension to the limitations period under 6501. But AD Global merely says that the two provisions should be read together, and it didn't imply that that means we should read 6229 out of the statute. And even the tax case that you cite, I have a hard time understanding how you think this is helpful to you, but the Rome, hold on, I don't know how to pronounce that case that you cite, specifically says the way you read them together is that 6501 has continuing vitality when the items that issue an individual taxpayer return have nothing to do with the partnership. In this particular instance, your whole case, and in fact the request that you had for judgment, had to do with whether or not the individual's return was accurate in light of inaccuracies that you deemed to exist in the partnership. Well, there are a couple of things going on there. One is that Rome Plank, I think, supports us because it establishes, first of all, Rome Plank stands for the relatively simple proposition that there is one limitations period and you read 6501 and 6229 together. We don't dispute that. It also stands for the proposition that the extension to the limitations period for fraud on a partnership return is not superfluous based on fraud. In that narrow circumstance, you have to read the fine print. In other words, you have to read the whole opinion. You cite it for the general propositions, but then the opinion concludes the reason it's not superfluous is that that individual could have something like having to do with their own personal home that has nothing to do with the partnership. And in that instance, 6501C survives. But it doesn't stand for the proposition that where you're only talking about partnership items on a return, that you ignore 6229. We're not suggesting that you ignore 6229, Your Honor. I think that the basic point is this. Our basic argument with respect to 6229 is Congress did not intend and there is no authority for the idea that if you involve a partnership in the that somehow results in a taxpayer's return being fraudulent, that the fraud exception under 6501C1 doesn't apply. That's our basic point, is that N2 doesn't say that you turn off the extensions to the limitations period under 6501. There is no authority for that. And as we mentioned in our reply brief, that Home Concrete deals with exactly the situation in which you're talking about. Home Concrete is another son-of-a-boss tax shelter. It's a Supreme Court case in which the Supreme Court applies the extension to the limitations period under 6501 for substantial omission from gross income as opposed to the extension to the limitations period for substantial omission from gross income on a partnership return. The basic dynamic between the two is that 1, 6229 speaks to extensions to the individual's limitations period based on items on partnership returns. Can you explain a factual scenario where 6229C1A would be triggered that doesn't trigger 6501C? Absolutely, Your Honor. Again, these get a little complicated, but the scenario is laid out in our reply brief. Here's the scenario. 6229C1, which is the fraud exception for partnership returns, requires that the partner participate in the preparation of the return and commit fraud. As a result of that, then all the tax that would be owing as a result of that fraud would be extended either six years based on other partners or indefinitely based on the particular partner who committed the fraud. Why wouldn't that always fall within 6501C? I'll give you a good example, Your Honor. When the taxpayer, when the partner who commits the fraud on behalf of the other partners, when they are the promoter of the shelter, for example, they are a 1% general partner, you've got the 99% limited partner that is the entire beneficiary of the shelter. When that partner commits the fraud in order to extend the limitations period of the other, in order to, I'm sorry, in order to evade the tax of the other partner, that partner's return, that 1% limited partner's return would be extended indefinitely based on the perpetration of his fraud, even though... Why would that happen under 6501C or at least under your theory of 6501C? Because, Your Honor, because he wouldn't have filed necessarily a fraudulent return. The benefits, the tax benefits, the fraudulent tax benefits on that partner's partnership return would flow to other partners but not to him. Right, but that's kind of the scenario we have here where the attorney was seeking to evade tax under your theory, but it wasn't his own tax that he was evading, it was the client's tax that was being evaded. So it's kind of seemingly the same or similar scenario to one partner designing something that helped his fellow partner evade tax. That's correct, but in our case, and the government concedes, that 6229C1 doesn't apply because, as you say, Your Honor, it's not the partner who commits the fraud, but in fact the taxpayer's higher tax professional who set up the shelter for him. But, again, do you understand why I'm having trouble understanding why 6501C wouldn't have applied to the very exact pattern you just described? Well, I feel like that is a slightly different question. If we're going to talk about 6501C1... I'm trying to really find out why is 6229C1A not rendered entirely eclipsed and superfluous based on your conception of 6501C? Okay. To back up, if we can return for one second to your example in which I'll try to illustrate how it would apply. If Erwin Mayer, the promoter of the shelter at issue in this case, was a 1% general partner, then 6229C1A, the indefinite extension to the limitations period, would apply to Erwin Mayer's return, even though he did not personally benefit from the fraud that was committed at the partnership level. Now, the other partners would have the six-year limitations period that would apply under subsection B. Why would it apply to Mayer's own return? Because Mayer's own return isn't infected by fraud. Because that's the statute that Congress wrote. I mean, sorry, that is the statute that Congress wrote. If you look at the particular language, it's... Okay, which words? So, going through the... Beginning with the lead language of C1 under 6229. And again, this is all premised on the fact that it's a hypothetical relative to this case because Erwin Mayer is not a partner in the return. But if any partner has, with the intent to evade tax, signed or participated directly or indirectly in the preparation of a partnership return, which Erwin Mayer would have done if he were a partner in this case, which includes a false or fraudulent item, then subsection A says, in the case of the partner so signing or participating, any in tax imposed by subtitle A, which is basically the income tax, which is attributable to any partnership item for partners taxable year, may be assessed at any time. Right, but then look at B. In the case of all other partners, subsection A shall be applied with respect to such return by substituting six years for three years. Correct. So why would you need to extend that period to six years instead of three years if under 6501C you could bring anything any time? Well, because in this scenario, there is a big difference between, for example, partnerships that are tax shelters and partnerships that are actually viable ongoing businesses. In tax shelters, the whole point is to evade the tax of the individual partners. And so in that case, you're right. You've got Erwin Mayer intending to evade the tax of the Patanais. And so therefore, their limitations period should be indefinitely extended under 6501. But in a normal... That's a little bit of a broad statement. In tax shelters, the whole point is to evade the tax. This implies evading a legitimate tax. There are a lot of tax shelters that are considered legal and that are not viewed as an act where you're evading a tax that you would otherwise owe. Right. You're talking about this particular one, this particular son-of-a-boss shelter. Right. Yes. Excuse me. I'm talking about this particular son-of-a-boss tax shelter. But the point is that in a case in which, for example, take, for example, the pre-TEFRA case, the taxpayer, that BASR brings up in its briefing comment, in which one taxpayer prepares the partnership returns in a fraudulent manner in order to benefit himself. But he didn't intend to evade the tax of the other partner. In that scenario, because you don't meet the second requirement of 6501, which is basically that the other partner's return might be false or fraudulent, but not with the intent to evade tax. Because the intent to evade tax... But how can a partner fill out a partnership return with the intent to evade his own tax? And where the clear result is that he evades the tax of everyone else, not have the very intent that you're saying under 6501C exists. Well, I think, Your Honor, if you bring up, for example, the Second Circuit kind of recognizes that at that point, which is the idea that when you have an accountant, for example, who cooks the books and knows that... For example, let's say he's siphoning off income of the company and so he's reporting the income amount of the company as being less than they actually are. I see that I've run out of my time, but if I could... I've still got a couple more questions. When an accountant under-reports income that then is used to produce a tax return, that's not fraud with intent to evade tax that implicates the fraud of the limitations period. That's fraud, no doubt. But it's not fraud with the intent to evade the company's tax. Same situation in the partnership context in which you have a partner who prepares a partnership return that is designed to evade his own tax, for example, but not the other taxpayer's tax. And so, therefore, just because the fraudulent partner knows that the other partner's returns that flow from the partnership return will be incorrect, it's not with the intent to evade their tax. And so, therefore, we can see... We don't argue in that scenario that the fraud exception to the limitations period would apply. And you say that you're saying 6501C doesn't apply? Or 6229C1A doesn't apply? 6501C would apply under that scenario, right? No, Your Honor. The whole point is that the person who caused the return to be fraudulent... The person who caused the return to be fraudulent, where you have one partner who is fraudulent, who files a fraudulent partnership return for his own purposes... That's 6501C. Yeah, the other partners, he didn't intend to evade the tax of the other partners. He intended to evade his own tax, and so 6501C1 would be implicated. But in terms of the other partners, who are bystanders and just the incidental beneficiaries of his fraud, then the 6501... If you look at the language of 6501, it requires a fraudulent return with the intent, not knowledge, but intent, to evade tax. And so what you have is you might have returns that are false or fraudulent as a result of the partnership's returns being false or fraudulent, but not with... Outside of the tax shelter context, presumably. Not with the intent to evade the other partner's tax. And that's how these... I'm sorry. That's how 6229C1A applies? When someone concocts a scheme to evade tax for his own partnership return that, by happenstance, infects everybody, all the other partners' income tax returns  you would go after those other partners' returns to recover the fraudulent underpayments? Well, that would be... Their returns would be extended under 6229C1B. It would be six years. But it wouldn't be Subsection A. And also, let me just... I think that the broader point is also this, is that just because there's... As you say, I mean, we don't concede that there are a lot of scenarios where you might happen... You would have both subsections being evoked. But in order to read out, in order to construe 6229 as turning off the extension to the limitations period under 6501, the fact that there is some overlap between the statutes in scenarios that we can dream up is not a reason to say that 6501 doesn't apply to these taxpayers. All right. Even if we assume that you're right, that basically we wipe out 6229 in these circumstances and you can just have an indefinite forever statute of limitations under 6501C, I have a basic problem with your argument, and that is that you agree that what we're talking about are cases of fraudulent returns, right? And the argument, the notion that you all contend in your brief that the return itself is just fraudulent, regardless of who's intent at issue. The problem is, I mean, common law principles say that something is fraudulent if the person providing the information provides false material information with the intent to deceive. Here we have, arguably, one or two people providing the information, the taxpayer and the tax preparer. And yet you concede and stipulate that neither taxpayer nor taxpayer had either the intent to deceive or the intent to evade the tax. So, I guess I don't understand how the return itself satisfies the concept of being fraudulent based on some third party's intent when that third party had nothing to do with the preparation of the return and the provision of the supposedly materially false information. Two responses, Your Honor. The first one is this, is that we aren't here, this is a case with the decided on a motion for summary judgment that 6501C1 never applies when it's the taxpayer who didn't intend to evade tax. So, we actually welcome the opportunity to go back and to litigate the issue as to whether Irwin Mayer caused the return to be fraudulent and intended to evade the taxpayer's tax in this case. We don't suggest that as you suggested, I think, in your question that fraud is a very facts and circumstances determination. And all we want to do is to go back to the Court of Federal Claims and to litigate the issue which was shortchanged here. No, because the point is even if we accept the proposition that perhaps we don't have to go so far as to say it's only the taxpayer's intent that's involved. I don't understand how you can take it even as a matter of law to an intent of a third party who had nothing to do with the preparation of the return. That would get to my second point, Your Honor. First of all, we would respectfully disagree with your characterization that he had nothing to do with the preparation of the return. Irwin Mayer, I would suggest to you, orchestrated the entire production of their return with respect to the fraud. He organized the shelter. He carried it out. He issued them opinion letters that instructed them as to how to prepare their return in conformity with the shelter that he had devised. And then he actually reviewed through his associates. Basically, you're saying that the taxpayer was the agent of Mayer? No. You concede the taxpayer had no intent to deceive and no intent to obey tax, right? We do not contend that they had an intent. And you concede that the taxpayer had no intent to deceive and no intent to obey tax. I mean, that's stipulation in the record. Yeah. So, the only way that Mayer's intent, deceptive intent, could render that document fraudulent is if they were acting as his agents. No, Your Honor, because I don't think, first of all, it's not the magic of the status between the parties. It's not just the taxpayer and his preparer. It's somebody who causes the return to be fraudulent. Somebody who you can go after for conspiracy to obey tax. Well, we can go after them, but what we can't do is we can't go after them for taxes. I mean, we can, you know, we can, and in fact, he's quite guilty to tax fraud. But what we're trying to do here is to hold the taxpayers responsible for the tax that they otherwise would have owed, which is exactly what the fraud exception to the limitations period exists for. It's not, it's not, it's a, it's not a tax... When you go after someone like Mayer and force him to pay a penalty for his crime, can you demand of the penalty the amount of money that was lost to the government through the fraudulent tax fees? Certainly, any, I mean... The answer is yes. As a restitution, you absolutely can. Yes, but... You do all the time. But, but, like, for example, take, take the Jenkins and Gilchrest shelters in this case. They perpetrated $7 billion worth of tax fraud. We're not getting $7 billion out of Jenkins and Gilchrest. And it's important, first of all, the fraud exception exists for the specific purpose of denying windfalls to taxpayers. But limitations exist for the express purpose of allowing people to get on with their lives, too. Absolutely, Your Honor, but it's subject to an express exception for fraud. A fraudulent return with the intent to evade tax, which is exactly what we have in this case. When it comes to 6501C, just the plain language in isolation, taken literally, I can, I think I understand your argument that it's, it's fraud. It's not restricted as to the actor that may have participated in the fraud, fraudulent return. It could be the taxpayer. It could be a tax preparer. Maybe it's some crucial third actor that, that induced the fraud, fraudulent return. But when I, I have to look at the origins of 6501C and that's section 250D of the Revenue Act of 1918, right? Mm-hmm. And so I guess your understanding is that provision in 250D was carried forward and is now represented in 6501C today, right? And so when I look at section 250D, I also see section 250B, which is the penalty provision, which says, okay, if the taxpayer himself specifically talks about the taxpayer was not at fault, then there's no penalty for the underpayment. If the taxpayer himself was negligent, then there's a 5% penalty, right? The statute specifically calls out the taxpayer in each of those two instances. Then for the third category in 250B, it just simply talks rather blankly about fraudulent returns, fraudulent returns with the intent to pay taxes, which is essentially identical to the very words of 6501C we have here. And in that instance, I understand your position from your brief that you read that broad blanket language as being confined to only when the taxpayer itself is fraudulent and has the intent to pay tax, and it's not anybody else, right, for getting that 50% penalty for 250B. And that part of 250B has been carried forward to 6663, which also broadly just talks about fraudulent returns without identifying an actor, and it's your understanding, it's the government's position, that again that broad language about fraudulent returns is confined only to when the taxpayer himself has been fraudulent and not any other party. And then I looked at, so that's all 250B in 1918, and then I looked just two subsections later at 250D, which is the same language we have here in 6501C, and once again that also uses the language fraudulent returns with the intent to evade tax, just like 250B on the fraudulent penalty provision. And so what concerns me about your position is you're asking me to read the same phrase in two different subsections that have been packaged together in the same section to mean different things. It answers your question, Your Honor. No, I'm not asking you to read the same exact language to mean two different things, because in subsection B, Congress made it perfectly clear that they were talking about taxpayer's intent. And in fact, if intent to evade tax only meant the taxpayer. Well, let me say I agree with you. Let me say I agree with you that when I look at 250B, and although when it refers to fraudulent returns with the intent to evade tax, it doesn't specify whose fraud that is, I agree with you that logically they are talking about the taxpayer's intent. Now, why isn't that also true for the exact same language in 250D? Well, again, I have two reasons, Your Honor. One is that the language itself, there would be no reason to talk about the fault of the taxpayer in 250B if the intent to evade tax could only be, you know, as a general matter, could only be the taxpayer. Because otherwise, why do you need to talk about the fault of the taxpayer? If it says, if there shall be no penalty shall apply if it's not due to any fault of the taxpayer. But if intent to evade tax, or the negligence penalty, which is also in the same subject, Your Honor, as you point out, why would you need to talk about taxpayer's fault if they were already determined to be negligent, if only their negligence or only their fraud would be applicable? And so I think that it's inconsistent to say that as a general matter, looking at the language in 250B,  intent to evade tax must be in reference only to the taxpayer. If 250B specifically points out that it's talking about the taxpayer's intent. Now, the... When it comes to no fault or negligence, that's what Congress said. It didn't say that with respect to fraudulent returns with the intent to evade tax. Correct. When it says fraudulent returns with the intent to evade tax in D, subsection D, the extensions, the fraud exceptions, the limitations period, there is no mention of taxpayer and there's no mention today, which suggests that it's not specifically bound. And the other thing that I would suggest, and I think it's crucially important here, is the statutes obviously exist for tremendously different purposes. One is their penalty provisions. They're intended to determine to punish the taxpayer for intentionally doing something wrong in their tax return. The fraud exception to the limitations period is designed to protect the government, to provide them enough time to determine the correct tax liability when they're facing the specific disadvantages that come with not having correct information. I agree. They're two different categories. But they were born together and packaged together in the same section of the 1918 Revenue Act. I still need to hear a reason other than the fact that they're different. You know, they're for different purposes. Why it's okay for us to write an opinion that says these two phrases that are the same mean different things or operate differently. Well, Your Honor, again, I think that the answer to your question lies in the fact that Congress specifically directed subsection D to the taxpayer and didn't do so in D. And when you have that specific... But in that particular provision of B, it does not mention the taxpayer at all. Taxpayers mentioned earlier in B, but in the section on fraud, the language is identical to the language in D. And you say that the purpose of the extended statute of limitations is to protect the government, but you don't have authority for that proposition. I mean, the purpose of that extended provision, since it's in the fraud penalty provision, could just as well be an additional penalty, which is not only are you going to have to pay more, but you're going to have to pay it no matter when we get to you. Well, I respectfully disagree, Your Honor. I think that Badaracco actually does support this. And you're right. In terms of legislative history, the legislative history is very slim when it comes to Revenue Acts of 1918. But I think that the Supreme Court looked at the statutory scheme and said that the fraud exception to the limitations period is designed to protect the government. And I think that that's correct. And you have Stephen's opinion that actually relies on that, which is a dissent that actually relies on that principle even more heavily. And so you really have unanimity at the Supreme Court. Can I just bring you back to the statutory language and to the phrase we're talking about? And this kind of follows on to Judge O'Malley's earlier point about agency and what kind of relationship. I mean, granted, you want us to do something in this case, and I appreciate that. And you characterize this as this is really an unusual situation, and you use the word orchestrated, where he really orchestrated this whole deal. But we've got to interpret the statute, and the limits, the words you use, I think, are whether you have a substantial involvement, a direct involvement. Well, those are squishy words. I mean, orchestrated is one thing. You're disavowing or distancing yourself from an agency principle, as Judge O'Malley pointed out. So what is the test then? How would you articulate the test? Is it orchestrated when one orchestrates it? What limitations, if any, would you have us place on our construction of this provision? As a guidepost to that, I think that the Second Circuit has done a pretty good job in this regard. Again, once you get past the possibility, we would submit that once you accept the possibility that 6501c1 can apply when somebody other than the taxpayer intends to commit fraud, we think that you have to send this case back in order for further proceedings. Of course, the Second Circuit was stuck with a party stipulation that said it did. Well, I disagree. Right, and they questioned that stipulation. All three judges from the bench said, are you sure you want this stipulation? Are you sure you want us to live with this? You can't stipulate to an issue of law, which is what we submit as actually before the court here. What the court, I believe, was, I think a fair reading of that opinion, is the court wasn't saying that we accept the party's agreement that the fraud exception means what the party's agreement means, and I think it would have been inappropriate for the court to have done that. What the court said is that there might be factual, I mean, listen, Citywide is a tough, factual case. The taxpayer in that case, first of all, just to point out an interesting point about Citywide, is that the person who committed the fraud in Citywide was not the return preparer. The return preparer prepared the returns, the taxpayer signed the returns, gave them to their representative, their power of attorney, to give them over to the IRS. That person threw away their returns, produced new returns, without the knowledge of the taxpayer, and filed those fraudulent returns and siphoned off the refunds, or siphoned off the difference. Can I get you back to the statutory question, though, which is, okay, we send it back because we all recognize that it could be broader than just the individual taxpayer, but beyond that, we might feel compelled to give some guidance to the trial court as to the whole universe of people other than the taxpayer that might be subject to this provision. So what kind of guidance would you offer? I'm sorry, Your Honor, for getting sidetracked. My guidance would be, I would suggest that, again, the Second Circuit used not incidental to the preparation of the return. I would use the statutory language as being your guidance, being that you need a fraudulent return with the intent to evade tax, which would mean that the person who intended to evade tax must have caused the return to be fraudulent. You can't have somebody who has no effect on the fraud being perpetrated on the return. That person, the person with the fraudulent intent, must have caused the return to be fraudulent. And so it's that causal relationship, Your Honor, that we submit is pivotal. It's not the relationship between the taxpayer and the person who perpetrated the fraud. It's the causation. It's the idea that you have a fraudulent return, which, again, we would like nothing more than to have this court send it back. Sorry, Your Honor. Limitation period's been around since 1918. How long has it been since IRS started going after non-taxpayers for fraudulent returns filed by the taxpayer under 6501C? Your Honor, the answer is... 1918? No. 1935 is the first instance that I found. 1935, the tax court said that the fraud exception is an impersonal statute that turns on the fraudulent return. Impersonal statute, as in not the taxpayer. And then if you move forward through the spousal fraud cases in which the courts... They're jointly therapeutically liable. But that's the result... I know about the 2001 Chief Counsel opinion. I know about the Allen Tax Court opinion. But, you know, these are all relatively recent vintage. Right, and citywide, Your Honor. But I would submit this. The mere incident that this doesn't come up a lot, I think, is more a reflection of the particular facts of this case. It is very hard for the government to prove fraud. Because, you know, I don't know. I mean, there have been a lot of son-of-a-boss tax shelters. And without Mayor's affidavit in this case, I don't know whether the... I don't know whether the government asserts the fraud exception to the limitations period.  at issue in this case which is why I think it's important that... which is why I think the Court of Federal Claims decision was so wrong because it short-changes that inquiry as to whether the government can actually meet its burden to show that there was fraud for purposes of the fraud exception to the limitations period. It says, well, if it's not the taxpayer, it can never be. And that, we submit, Your Honors, is wrong. So let the case proceed and we'll have a trial about whether the fraud committed by Mayor, whether Mayor had fraudulent intent, and whether he caused taxpayer's return to be fraudulent. Okay. I think we have your argument. Thank you, Your Honor. We have two or three minutes for rebuttal and let's hear from Mr. Cullinan. Good morning. Tom Cullinan for BASR. The statutory scheme, the legislative history, the intent of Congress, and all of the case law all indicate that Section 6229C1 governs here. Indeed, no court, aside from the court and the proceedings below, has ever applied 6501C since TEFR has been enacted to determine whether an allegedly fraudulent partnership tax return extends the time that the IRS has to assess tax. To the contrary, every court that has considered that issue, including this court in the Transpact Drilling case, has applied 6229C1. The government never... How do you get around the broad language in AD Global and in Pratty? Excuse me? How do you get around the broad language in AD Global and in Pratty? They're entirely consistent with our position. We agree with AD Global and Pratty that the normal assessment period is set out in 6501A. It's three years. We don't dispute that. What the taxpayer was arguing in AD Global was that 6229... But AD Global spoke a little more broadly than that. In fact, it spoke a lot more broadly than that. It said 6501 applies to all tax assessments under this title. That includes partnership tax. It also includes 6501N2, which says... For extensions. For extensions, in the case of partnership items. For extensions that are, you know, go beyond 6501. If there's things that you can't get under 6501, maybe then that's when you consult 6229. Maybe that's what the cross-reference means. Well, I suppose that's possible, except then you'd be making entire provisions... And that would be entirely consistent with what the court said in AD Global. You could read AD Global that way. I don't think it should be read that broadly because if you read it that broadly, then you're reading 6229 or entire parts of it out of the statutory scheme, including, as Your Honor asked many questions about 6229C1A. You'd also be reading 6229B3 out of the statute. Neither would have any meaning. So I want to start with... What about the Supreme Court opinion that your opposing counsel referred to where it was a partnership tax issue, but the Supreme Court went straight to 6501 or the seemingly applicable provision for 6501 without mentioning at all the sister provision, 6229? That's the Home Concrete case, and Home Concrete proves that our position is right. The Home Concrete case addressed the gross emission exception to the statute of limitations, and there's an exception that exists in both 6229 and in 6501 that for the most part have always been interpreted the same way. And in that case, in its brief to the Supreme Court, the government explained the statutory scheme just as BASR explains it here, writing that the gross emission exception in 6229 was not an issue in that case because, and this is a quote from the government's brief, this case involves only emissions from individual partners' returns subject to section 6501E1A and not emissions from Home Concrete's partnership return subject to section 6229C2. The government's brief can be found in 2012 Westlaw 72439, and the quoted language is on page 10. Thus, until now, the government interpreted the statutory scheme the same way that we're interpreting it here. When the gross emission is on the partnership return, you look to 6229. When it's on the partner's return, you look to 6501. The same rule should apply when there's fraud. When the fraud is allegedly on the partnership return, you look to 6229. And when it's on the partner's return, you look to 6501. So, I want to start with one of the questions that the bench asked right off the bat because I think it's important here about the government kind of trying to draw a distinction here about this case versus other cases involving allegedly fraudulent partnership returns. You know, they say that the whole point of the scheme here was to evade the partner's taxes. The real flaw in that analysis is that's always going to be the case in allegedly fraudulent partnership return. Partnerships don't pay tax. Only partners pay tax. The whole point in every scheme involving the allegedly fraudulent partnership return is always going to be to evade a partner's taxes. If that is all that is required in the government's view to make 6501c applicable, 6229c loses all meaning. But that clearly isn't what Congress intended as the court is rightly discerned from the briefing. Indeed, the legislative history made that quite clear. The Senate and House conference reports both say the same thing in the legislative history behind 6229c-1. Assessments may be made at any time against partners signing or actively participating in a fraudulent return. Against other partners affected by such a return, the period for assessment is extended from 3 to 6 years. That language clearly shows that Congress intended 6229c to govern here. The government alleges that BASR's returns are only fraudulent because of, or excuse me, BASR's partners' returns are fraudulent only because of BASR's partnership return. That comes right out of the answer, which is at Joint Appendix 59, where the government writes that the partners' returns falsely and fraudulently incorporated their respective proportionate shares of the understated capital gains reported by the partnership and passed through to them. Thus, the government's entire theory in this case is that the Petnati's returns were fraudulent only because BASR's return was allegedly fraudulent. But that is precisely the situation in which Congress intended 6229c-1 to apply. That's spelled out in the legislative history. Let me ask you about Citywide. What do you understand the stipulation in Citywide to have been the one that panel members were a little concerned about but decided to accept? I don't think there was any stipulation. The taxpayer in Citywide and the tax court argued both that the Allen decision was essentially wrong. But he also argued that in that case, the return preparer, that the government had failed to prove by clear and convincing evidence that the return preparer actually intended to evade tax. The tax court held on the latter question in the taxpayer's favor. So then when the government appealed, the taxpayer just conceded the former question. The government filed the opening brief in that case and defended Allen, spent half its brief arguing how 6501c could apply, incorporating this agency argument that the panel asked about before. And then the taxpayer filed this response brief and didn't even address it, just conceded away the entire Allen issue, and instead decided to defend that case solely on a factual basis as to whether the government had proved that the return preparer had intended to evade tax. So then the taxpayer gets up in front of the panel, and every judge on the panel, I've never seen that happen, every judge on the panel asked the taxpayer's counsel, did you really mean to concede that? And he answered yes. So I don't think it's a stipulation, he just conceded it. So the court never had any reason to address it, and the Second Circuit made that quite clear in its decision that it wasn't addressing that question. I want to get back to the 6229 question, because there are some questions about C1A versus C1B. And the government's really tried here, but there is absolutely no circumstance where the court accepts the government's construction of the statutory scheme that C1A will ever have any meaning. That is because in every situation where C1A would apply to a partner, under the government's theory, 6501 C1 would also apply to that partner. They just can't even imagine an example. So 6229 C1A would lose all meaning if the court adopts the government's construction. Instead, what they really try to do, and what they keep on pushing back towards, is to try to give some meaning to 6229 C1B. And if you go to page 31 of its reply brief, they summarize what they conceive the purpose of that statute to be. They say, first, to give the IRS more time to assess tax against a partner in a fraudulent partnership return, even when it turns out that the partner did not benefit from the fraud. And second, to extend the limitations period of a partner who benefited from a fraud without the partners who perpetrated the fraud having so intended. There's absolutely nothing in the legislative history, the case law, or the statutory scheme to suggest that Congress had such a limited and far-fetched purpose for 6229 C1B in mind. And to the contrary, the legislative history, which I quoted before... Does the statutory language tolerate that scenario, though? No. You shouldn't read the statute in a way that makes 6229 C1A completely superfluous. It would have absolutely no meaning if the court accepted it. Well, they've devised a scenario where they say this is how it could work. You're saying it's a far-fetched scenario. No, I'm not. I think what they just played Monty. All they did is they kept on pushing the court back into C1B. I guess what my friend here eventually got to in trying to imagine a scenario where C1A could apply is... I think he said, well, if Irvin Mayer had been a partner in the partnership, but he didn't really get any of the tax benefit, then C1A would apply. No, it wouldn't. C1A only gives the IRS an unlimited time to assess tax with respect to fraudulent partnership items for that partner who was culpable in the fraud in the partnership return. If he didn't benefit from the return, if he didn't get any benefit, then there's nothing to assess. So the government is essentially claiming that Congress enacted 6229 C1A to give the IRS more time to assess taxes on something that is completely non-assessable. I mean, that's obviously nonsensical. That couldn't have been what Congress... Go for other types of underpayments that might have occurred on that person's return. No, because I think C1A is limited to partnership items. Only if you get the 6501C, then you have the open-ended extension that they can assess for anything. 6229, the period of 6229 only applies to partnership items. So unless that partnership item was reported on that partner's return, then the statute is just nonsensical. And the government's position also runs afoul of 6229B3. Again, its whole position here is 6501 to draw a big circle around it, and that's the sphere that controls here. And that 6229 can never shorten the period that is set forth in 6501 including all of its subparts. But the government made the same argument in the Ginsberg case, and they lost that argument there because 6229B3, in that case, the court expressly held, did serve the limit, the period that otherwise would have applied under 6501. So what the government does then is, I think it's on page 31 of its reply, is, well, they say, all right, 6229B3 is really just an exception to the general rule that we're proposing here. It's not an exception. It just proves that their entire construction of the scheme is altogether wrong. But even if it were appropriate to view 6229B3 as an exception, it should also be appropriate to view 6229C1 as an exception. Section 6229C1, Congress even labeled it a special rule in the case of fraud. Moreover, both 6229B3 and C1 work the same way by modifying the period set out in section 6229A. The government gives absolutely no reason to treat B3 as an exception to its general rule, but not C1. So with that, I'm going to move into the 6501 issue for a couple of minutes. So even if 6501 does apply, I'd like to explain why CASR is still entitled to judgment as the court below held. Going back to the 1918 Act, as the court knows, Congress enacted the predecessor to both the fraud penalty and the exception to the normal assessment period in the 1918 Act exactly one subsection apart in B and D. They use the same exact language. As Professor Camp demonstrates in his amicus brief, Congress intended that language to have the same meaning. The language was a coordinated response to taxpayer behavior, and there's absolutely nothing in the legislative history where she compiles it blank to suggest that Congress intended them to have different meanings. So the government has left to counterfactually argue that Congress actually did intend to define them differently. And the way the government gets there is it says the words intend to evade tax in both of those subsections actually do mean the same thing. Anybody's wicked intent could satisfy either one of those sections. But what's different about the fraud penalty the government claims is, well, there's this qualification in that part of the statute that talks about the taxpayer's fault, that there won't be any penalty if the understatement was not due to any fault to the taxpayer. An initial problem with the government's argument is that part of the, that language actually comes earlier in the statute talking about the negligence penalty. And Congress is making clear that the negligence penalty wouldn't apply when the taxpayer is not at fault. So that forces the government to take an even broader position in this case to argue that that but for language, the requisite intent for negligence also would not be limited to the taxpayer. To quote the government's reply to page 12, where Congress wanted to focus beyond the taxpayer's intent as with the fraud penalty and the negligence penalty, it consistently made that clear, referencing the taxpayer directly. That isn't true. Congress has used the term fraud and negligence and recklessness and other similar terms throughout the Internal Revenue Code without to use the government's language referencing the taxpayer directly. So in the government's view then, fraud for purposes of all these other provisions should mean anyone's fraud or anyone's negligence or so on. What do you do with the fact that the Supreme Court has said and the Allen Court echoes that one of the purposes at least of statute of limitations is for the benefit of the government? Well, that's, I think, one of the exceptions to the fraud exception. I mean, the purpose of the statute of limitations is actually closure. Right, but the exception. I apologize. And that's certainly true, but I think presumptions only come into play when the statutory language isn't clear. And here, if you look at the 1918 Act, it's pretty unmistakable that Congress intended those phrases to have the same meaning. And I think you can't apply a presumption to read a statute so it's nonsensical. Maybe both times they're not restricted to the taxpayer. Well, but then the problem as I was just raising is that you would have to read that in every section of the current code. Anytime the code talks about negligence, it could be anybody's negligence. In fact, that's what they say in the brief. Anytime the code talks about fraud, it could be anybody's fraud because Congress didn't take the trouble to reference the taxpayer directly. Congress knows how to reference the taxpayer. But even the government here doesn't seriously suggest. In fact, they say in their brief, you know, well, we don't really mean that. Right? So they want to apply a plain meaning analysis to the 1918 Act that just doesn't work because they agree that when you apply that plain meaning analysis to other sections of the code, it falls apart. But they don't even suggest that. I see my time is up. Well, no. We want to compensate you if you need extra time just because the government took so much more time because of our questions. So if you have other remarks you want to make for a few minutes, go ahead. I appreciate that. Thank you. I'll try to be very brief. I want to move into the government's, you know, the government makes two claims really with respect to the 6501. They go back to the 1918 Act and they say, well, as I said, Congress really intended to define them differently and Congress really intended that going all the way back  Well, that second part of their claim also isn't true. A lot of courts have said that the fraud penalty and the fraud exception to the statute of limitations mean the same thing. We quoted a few of those cases in our brief but there are many, many more. In fact, the Battaraco case that the court and my friend here brought up, that case was a case involving the statute of limitations under 6501 but the court actually looked to case law under the fraud penalty to answer the question. If the fraud penalty has a different meaning under, you know, if the fraud penalty has a different meaning for purposes of fraud penalty than it does for purposes of the statute of limitations, I think it would have been non-sensical for the court to draw on that case law to answer a question under 6501 and to answer Judge Chen's question, the government for the first time actually started to apply the position that was taking this case in 2001. Until then, the administrative guidance that we quoted in our brief applied the statute exactly as we apply it here and it wasn't until 2001 that they said that a preparer's intent could hold open the statute of limitations. Under an agency of theory. Under, exactly right. It was the agency of theory that they expressly laid out in that guidance and that's the same theory that they pressed to the tax court in the Allen case and that's the same theory that they pressed to the Second Circuit in the Citywide case but it's abandoned here because it can't work here. As the panel asked also, Mayer was not an agent    he didn't prepare the returns. The government has stipulated that he was not an agent for BASR or any of his partners. He didn't sign the returns, but it was stated that John Malone who had no fraudulent intent was the return preparer so they can't rely on the same agency theory here which forces them to take this unbounded definition of fraud to focus solely on the return and argue that anyone's intent can matter. It doesn't have to be a preparer. It doesn't have to be an agent.   regardless of religion. Well no, what your friend said was that the person who intended must have prepared the returns and that's not true. It can be anyone regardless of religion. It can be anyone who has caused the return to be fraudulent. That's what your friend told me at the end of his argument. Exactly right. So if somebody prepares a false W-2 or W-9 and passes it on to the taxpayer and the taxpayer incorporates it into the return that's going to cause the return to be fraudulent. I don't see that causation type analysis as really adding much of a restriction to the government's position here. Any time that the tax is underpaid it's always going to be caused by their theory if you accept the notion that somebody other than the preparer can cause the return to be fraudulent. There's always going to be causation when there's an underpayment. I don't understand how that adds anything to the analysis. The last thing I want to talk about for just a minute is the government repeatedly claims throughout its briefs that BASR hid the transactions from the IRS and that's why it's appropriate in this case to give the government more time to assess taxes and that also isn't true. BASR reported every item on its return the way the IRS's rules and regulations required it to be reported. They filed Section 743 statements with the returns that expressly disclosed to the IRS and this is at Joint Appendix 1221 and 1222 which was part of BASR's tax returns that BASR was stepping up the basis in its assets by $6,629,311 which is the exact amount that's at issue in this case. BASR carried that number over to its Schedule D so it reported that number as the basis in the page printing stock that it sold. That's at JA 1219 and as we pointed out in our brief the tax court looked at that same exact reporting in another case called R&J Partners which also dealt with a short sale of transactions that had been structured by Jenkins and Gilchrist and in that case the court was evaluating the gross emission exception to the statute of limitations but that exception to the statute of limitations has an exception to the exception for the taxpayer You don't dispute though that sometimes it is going to be harder for the government to uncover a fraudulent scheme. It's going to take more time. Sure, I don't dispute that but that's not the case. You're just saying here it wasn't that case. This return setting aside the Schedule K-1 was eight pages long. The six million dollar number is by far the largest number on the return. It jumps off the page. There's no way you could miss it. So the tax court looked at that exact same reporting in R&J and said quote that reporting did not mislead, respond, or place them at a special disadvantage in detecting the error that the government alleged. So the government we cited that case in our brief the government ignores it and they just continue to blindly assert that everything here was hidden. It wasn't unless there are any questions with that I'll conclude. Thank you very much. Thank you. Okay, we'll give you an extra three minutes of rebuttal if you need it. Given how much I ran over I'll try to be as brief as possible. Three quick points. The first point is we say it was deceptive. They say it wasn't deceptive. All we want to do is actually litigate the point. The Court of Federal Claims decision prevented that short-circuited that process by virtue of saying the fraud on the return and error in merit and intent to commit the fraud are irrelevant because the limitation period expired. All we're looking to do is actually litigate the fraudulent issue. The second issue is this is that we don't dispute that fraud for purposes of the fraud penalty and for purposes of the exception to the limitation period is the same. What would be the issue here? But that's not the issue. The issue here is who's fraud? And 6501C1 does not restrict the fraud to the taxpayer. And we haven't mentioned this before is that that should be strictly construed in the government's favor because it prevents the government from collecting tax otherwise rightfully owed. But 6663 also doesn't restrict it just to the taxpayer. But there is a well first of all there is of course as you mentioned you know back in the day there's it was within the same section and now it's within a different section but that penalty doesn't apply when the taxpayer is not in the wrong. And so back in 1918 that was true and today that's true. So I don't think that that's actually that that is a problem for the government's position. And then finally I'll just add this is that no of course taxpayers have tried mightily as well as it's actually meekly no court has actually restricted 6501c1 the fraud exception to the taxpayer. And and no court has said But no court's ever taken it past the tax preparer. Well as I mentioned your honor Citywide actually did just that. The Manzor Beg who was the power of attorney was not the tax preparer in that case. Meaning he fraudulently caused the attorneys to be fraudulent and they were fined. He basically prepared the document that was submitted. The second circuit didn't actually do a statutory construction treatment of 6501c1. I think I respectfully disagree your honor. They did do a statutory construction treatment of 6501c1? They they they they agreed without. They did not do a statutory construction of 6501c1? Correct your honor. Okay. They they did mention that 6501c1 was a fraud exception at issue and they said they agreed without and it made sense. And and that is that is in direct conflict with the result at issue below here. Which is that 6501c1 can never apply unless the tax payer is acting fraudulently. And unless there are any other additional questions. Thank you. We thank both counsels for this very helpful case submitted.